UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 3:19-cr-00078 (VLB) |
| | : | |
| JAIME PINTO | : | |
|    Defendant. | : | |
| | : | April 14, 2020 |

## MEMORANDUM OF DECISION DENYING DEFENDANT'S MOTION FOR RECONSIDERATION OF DETENTION ORDER

Before the Court is Defendant Jamie Pinto's Motion for Reconsideration of the Court's Detention Order "due to an extraordinary change in circumstances." [ECF No. 51]. The Defendant seeks to be released into the community based on his risk of complications should he contract COVID-19 while incarcerated at the Hartford Correctional Center. The Government takes no position on Defendant's motion. [ECF No. 53]. For reasons set forth below, the Court DENIES Defendant's motion.

### Background

On March 20, 2019, Defendant waived his right to prosecution via indictment and pled guilty to a four-count information charging him with Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349, Wire Fraud in violation of 18 U.S.C. §§ 1342, 1343, and two counts of Aggravated Identity Theft in violation of 18

1

U.S.C. §§ 1028A and 2. [ECF Nos. 1, 2, 6]. Mr. Pinto's criminal activities, in his own words, consisted of the following:

> I used other people's identities through fraudulent identification documents to purchase and lease vehicles that I knew were going to be fraudulently transferred to people that I had made an agreement with to accomplish this. I was paid by my co-conspirators to accomplish this. There was no intent on my part or my co-conspirators to legitimately pay for the vehicles or comply with the leases. I knew that based on my providing an ID money would be fraudulently transferred to accomplish this. I did this approximately 14 times.

[ECF No. 3 at 1-2 (Petition to Plead Guilty)].

On the same day, March 20, 2019, Magistrate Judge Robert A. Richardson issued an Order Setting Conditions of Release. [ECF No. 11]. The Court required, *inter alia*, that Defendant file an unsecured bond in the amount of $75,000, that Defendant "not violate federal, state, or local law while on release," and that Defendant "submit to testing for a prohibited substance," handwriting in that "Defendant is already undergoing such testing with the State." *Id.*

On April 5, 2019, two weeks after Defendant pled guilty and was released on the conditions noted, and others, the Probation Office filed a Petition for Action on Conditions of Pretrial Release with the Court. [ECF No. 17]. The Petition recounted that on March 28, 2019, eight days after pleading guilty and being released on the condition that Defendant "not violate federal, state, or local law while on release," Defendant was arrested by Vernon police and charged with "Possession of Illegal Narcotics, Possession of Drug Paraphernalia, Failure to Use Turn Signal and Operating a Motor Vehicle without a License," after being observed frequenting a known drug-transaction location accompanied by a person previously arrested on

2

drug charges by police. *Id.* Upon being searched, Mr. Pinto was found to be in possession of 0.6 grams of crack cocaine and two glass crack pipes. *Id.* Mr. Pinto was released on a $1,000 non-surety bond.[1] The Petition also noted that Defendant had been attending a drug rehabilitation program but had been unsuccessfully "discharged from the program due to lack of attendance" on March 21, 2019, one day after pleading guilty to the federal charges that are the subject of this case. *Id.*

On April 17, 2019, Judge Richardson held a bond hearing to address Defendant's violation of the Order Setting Conditions of Release, allowing Defendant to remain on presentencing release and ordering that all prior-imposed conditions would "remain in effect but condition 7(o) has been modified to require Mr. Pinto to submit to IOP ["Intensive Outpatient (Drug Treatment) Program"] starting on Monday, April 22, 2019. Mr. Pinto must comply with all of the rules and policies of the program. Additionally, the Court advised Mr. Pinto that if he experiences any complications or problems with the IOP program, release condition #7(a) requires him to notify U.S. Probation immediately." [ECF No. 23]. During the hearing, Judge Richardson gave Defendant "quite a stern warning" regarding Defendant's required strict adherence to all release conditions.[2]

---

[1] Defendant's State criminal case on these charges is *State v. Pinto*, No. T19R-CR19-0180209-S (Conn. Super Ct.). Defendant pled not guilty to these charges and has a pre-trial hearing scheduled May 13, 2020.

[2] [ECF No 34 (audio transcript of July 17, 2019 bond revocation hearing) (Statement of Probation Officer Stacey Alston regarding proceedings at Judge Richardson's April 17, 2019 bond hearing)].

3

On June 17, 2019, the Probation Office filed a second Petition for Action on Conditions of Pretrial Release with the Court. [ECF No. 28]. The petition recounted that since being directed to attend IOP drug treatment by Judge Richardson, Defendant had:

- Prior to May 2, 2019, tested positive for illicit substances
- On May 2, 2019, tested positive for cocaine and fentanyl
- On May 13, 2019, tested positive for cocaine
- On June 4, 2019, tested positive for cocaine and fentanyl

The petition also noted that since being ordered to attend intensive outpatient drug treatment by Judge Richardson, Defendant's attendance "ha[d] been inconsistent and he has missed ten sessions since April 26, 2019." [ECF No. 28]. "Clinical staff" had recommended that Mr. Pinto participate in a higher level of care, specifically, inpatient treatment." *Id.* The petition then noted that IOP "[s]taff had scheduled two assessment appointments with Mr. Pinto in order to facilitate this [inpatient] treatment (June 12th and June 13th), both meetings he failed to attend," and that "Mr. Pinto was instructed to report to the Probation Office on June 14th at 10AM, an appointment he also failed to show for." *Id.* The petition summed up: "In light of Mr. Pinto's continued use of illicit substances, failure to attend treatment as required, his failure to report to the probation office as directed, Mr. Pinto appears to be making minimal efforts to comply with pretrial supervision." *Id.* The Petition then prayed for an order for "a summons compelling Mr. Pinto to appear before the Court to show cause as to why his conditions of release should not be modified or

4

revoked." *Id.* The Court signed the Order for the requested summons to show cause the same day, June 14, 2019. *Id.*

The Court held a hearing on July 25, 2019 for Defendant to show cause why his conditions of release should not be modified or revoked. [ECF No. 33].

At the hearing, Defendant contested none of the facts in Probation's Petition. [ECF No. 34 (Detention Hearing audio transcript)]. Probation Officer Alston testified that Defendant had refused to participate in the recommended inpatient drug treatment program. *Id.* Defendant testified that in addition to the charges of drug possession, discussed *supra*, which were pending before the Rockville court, he also had a charge of violation of probation before the New Britain court, which was pending.[3] He also testified that he had started a drug treatment program in May 2019, *id.*, and that while he admitted to the positive drug tests outlined in Probation's Petition, his most recent drug test, on July 19, 2019, was negative. *Id.* Probation countered that clinical providers were still recommending that Mr. Pinto participate in inpatient drug treatment, which he refused, and that he had a drug test that was positive for fentanyl on July 17, 2019. *Id.*

The Court, noting that Defendant had trouble consistently providing negative drug tests, and consistently avoiding violating the law, revoked Defendant's presentencing release bond, finding that there was no condition or combination of conditions that would ensure Defendant's compliance with the law. *Id.* Before

---

[3] The Court noted that this meant that at the time of his arrest on federal charges and the arrest by the Vernon Police Department, Defendant was on State supervision.

5

adjourning, the Court informed Defendant that it was "worried about [Defendant's] life." *Id.*

Defendant's father passed away on September 11, 2019. Defendant was transported from Wyatt Detention Center to the Hartford Correctional Center for his father's funeral. The funeral occurred in East Hartford, CT on September 20, 2019. After the funeral, Defendant returned to detention at the Hartford Correctional Center on September 20, 2019 and has been incarcerated there since that time. [ECF No. 51 ¶¶ 7, 8].[4]

On April 8, 2020, Defendant, through counsel, filed the instant motion for reconsideration of his July 25, 2019 Order of detention. [ECF No. 51]. Defendant's only ground for reconsideration is the COVID-19 pandemic and the increased risk of infection while incarcerated, and Defendant requests release on the previously approved conditions of release, with an added Order for inpatient treatment and curfew. *Id.* ¶ 14. The Government takes no position on Defendant's motion. [ECF No. 53].

## Legal Standard

In the Second Circuit, the standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the

---

[4] It is not clear from the record why Defendant was not returned to the Wyatt Detention Center.

court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see* D. Conn. L. Civ. R. 7(c) (requiring the movant to file along with the motion for reconsideration "a memorandum setting forth concisely the controlling decisions or data the movant believes the Court overlooked").[5]

There are three grounds for granting a motion for reconsideration: (1) "intervening change of controlling law"; (2) "the availability of new evidence"; or (3) a "need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Fed. Practice & Procedure*, § 4478 at 790). If the Court "overlooked controlling decisions or factual matters that were put before it on the underlying motion," reconsideration is appropriate. *Eisemann v. Greene*, 204 F.3d 393, 395 (2d Cir. 2000) (per curiam). However, a motion for reconsideration should be denied when the movant "seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257; *Patterson v. Bannish*, No. 3:10-cv-1481 (AWT), 2011 WL 2518749, at *1 (D. Conn. June 23, 2011) (same).

## Analysis

As an initial matter, the Court notes that Defendant has not filed the required Memorandum "setting forth concisely the controlling decisions or data the movant believes the Court overlooked." D. Conn. L. Civ. R. 7(c). In fact, Defendant has cited no decision, controlling or otherwise, in which a court has reconsidered an

---

[5] Local Rule 7(c) concerning motions for reconsideration applies to criminal cases. D. Conn. L. Cr. R 1.

order of detention based solely on the COVID-19 pandemic, or any other condition of incarceration.

More importantly, Defendant requests that the Court release him to the community on the same conditions as previously imposed, which Defendant wantonly violated. Defendant suggests the Court order Defendant to attend inpatient drug treatment as well, but Defendant has already shown that he is willing to ignore court orders he chooses not to comply with, and specifically orders about drug treatment programs he chooses not to attend.

In sum, nothing has changed as pertains to Defendant specifically since the time the Court ordered his detention. The Court notes Defendant's concerns as regards the COVID-19 pandemic, but Defendant does not argue that he has any underlying medical conditions that might place him at a higher risk of serious illness. And, as the Court noted at the July 25, 2019 hearing, the Court, should it release Defendant on essentially the same conditions as were previously imposed, would have serious concerns about Defendant's life, given his inability to stay drug free or avoid violating the law. In short, the Court is unwilling to trade the relatively minor risk that Defendant will develop a serious medical illness after contracting the COVID-19 virus while incarcerated with the near-certain risk that Defendant will overdose or injure himself or others in the course of violating the law if he is released.

## Conclusion

For the reasons stated above, the Court DENIES Defendant's Motion for Reconsideration of his Order of Detention.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

**Dated this day in Hartford, Connecticut: April 14, 2020**